147 So. 500

## STATE v. DOUCET.

### No. 32197.

March 27, 1933.

Carmouche & Carmouche, of Crowley, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and John J. Robira, Dist. Atty., and S. H. Jones, Asst. Dist. Atty., both of Lake Charles, and James O'Niell, Asst. to Atty. Gen., for the State.

*ODOM, Justice.*

The accused was convicted of manslaughter, and sentenced to hard labor in the state penitentiary for not less than 6, nor more than 10, years. From this conviction and sentence he prosecutes this appeal.

During the course of the trial, a number of bills of exception were reserved, but only two, Nos. 12 and 13, are urged on appeal.

The accused was charged with murder. But prior to proceeding with the trial the state abandoned the charge of murder and elected to go to trial only on the charge of manslaughter. The trial judge charged the jury that it took the concurrence of nine only of the members to render a verdict. Counsel for defendant objected to this charge as being illegal, and asked the court to charge that it took the concurrence of all twelve members of the jury to render any verdict. The court refused to so charge, and Bill No. 12 was reserved.

■ 1. This bill discloses no error. The charge of manslaughter is included in that of murder, being a crime of the same generic class as murder, but one of a lesser degree. In such cases the state may abandon the charge of the greater crime and proceed with the prosecution of the lesser, and no formal amendment of the indictment is necessary for that purpose. A motion in open court in the presence of the accused and entered on the minutes prior to the beginning of the trial is sufficient. State v. Bourgeois, 158 La. 713, 104 So. 627; State v. Kelly, 176 La. 405, 146 So. 6.

■ The charge under which defendant was prosecuted was manslaughter, a crime which is punishable at hard labor for a term not exceeding twenty years. Cases in which the punishment is necessarily at hard labor are triable by a jury of twelve, nine of whom must concur to render a verdict. It is only in capital cases that all twelve of the jurors must concur to render a verdict. Constitution 1921, art. 7, § 41.

2. Bill No. 13 presents a more serious question. After the trial judge delivered his charge to the jury, they retired to their room for deliberation, where they remained for quite a while. They asked that they be permitted to return into the courtroom for the purpose of receiving additional instructions. In the presence of the accused and his counsel and the district attorney, representing the state, the jurors asked the court if it was within their power to qualify their verdict by making a recommendation to the court for mercy. The court instructed the jury that it was, and that they might do so if they saw fit. Whereupon counsel for defendant asked the court to instruct the jury that, whereas it was within their power to make such recommendation, yet the court had the legal right to disregard such recommendation. The court so instructed the jury, but added "that it always gave great weight to the recommendations of the jury."

Counsel for defendant in open court objected to this latter remark by the judge, and reserved bill of exceptions No. 13.

The basis of the objection was that the court's remark that it always gave great weight to the recommendation of juries was calculated to influence the jury in rendering a verdict.

■ 3. Under our law, the function of juries in criminal cases is to pass upon the guilt or innocence of the person on trial according to the testimony adduced and the law as given them in the charge by the court. They have nothing to do with the question of punishment, but only with guilt or innocence. In some instances they may fix the grade of the offense and in capital cases may qualify their verdict so as to remit the death penalty. They have nothing whatever to do with the quantum or kind of punishment to be inflicted when the grade of the offense is fixed. The fixing of the punishment to be inflicted is a function of the court.

See cases cited in Marr's Criminal Jurisprudence under the general heading "Respective Functions of Judge and Jury."

■ There is no statute in this state authorizing juries to qualify their verdicts by recommending that the court extend mercy to the defendant. However, it is now and has always been the custom for juries to make such recommendation if they see fit, and no objection has been raised to such practice. Such a recommendation, however, is not considered as a qualification of the verdict, but is regarded only as surplusage. State v. Bradley, 6 La. Ann. 555; State v. O'Brien, 22 La. Ann. 27; State v. Rosa, 26 La. Ann. 75; State v. Cook, 117 La. 114, 41 So. 434.

■ We see no reason why this practice should be condemned, and we expressly refrain from doing so. In cases where juries seek the advice of the court as to whether they may make such recommendations, there is no error in instructing them that they may do so. But, in so instructing them, the court should further inform them that, while it is within their province and power to make such recommendation, yet the court is not bound by it, and that it is entirely within its discretion whether such recommendation be regarded in fixing the punishment. Any statement or intimation by the court to the jury that such recommendation will be favorably considered in regard to the fixing of the punishment is fatal error.

■■ The reason is that a statement or an intimation by the court to the effect that such recommendations might alter the penalty or mitigate the punishment is well calculated to influence the verdict, especially in a doubtful case. The function of the jury is to pass upon the guilt or innocence of the accused. That is what they are sworn to do and what they are instructed to do. Presumably they do their duty. But it is no reflection upon the personnel of any jury to say that they may be influenced in their findings, to some extent at least, by a consideration of the penalty or punishment which may follow their verdict. An intelligent citizen, and a perfectly honest and conscientious one, serving as a juror, might be willing to convict an accused for stealing a pig if such conviction carried with it punishment by imprisonment in jail for 60 days. But, if he knew that the conviction carried with it the death penalty or imprisonment for life, he would hardly be will-

ing to pronounce the defendant guilty, even though the facts and the law warranted such verdict. It is a matter of common knowledge that the severity of the penalty deters prosecutions and convictions in some instances. Neither jurors nor judges willingly convict if, in their opinion, the punishment which necessarily follows is out of all proportion to the wrong done.

. The circumstances which we have cited are extreme, but they illustrate the point, which is that juries in some instances may be influenced in their deliberations by a consideration of the penalty which may follow their verdict.

The fact alone that a jury, after having deliberated for hours without being able to agree upon a verdict, comes into court and asks if they have the power to recommend mercy, indicates strongly, if it does not show, that some of them at least would not agree upon a verdict of guilty on any other terms. And the further fact that, after being told that they could make such recommendation and that it would be given great weight, the jury again retires and later brings in a verdict of guilty "and recommend leniency of the court" as was done in the case here, raises a strong presumption that the remark made by the court that it always gave great weight to such recommendations influenced the final result.

The trial judge correctly told the jury that they might recommend mercy if they saw fit, but that such recommendation might, within his discretion, be disregarded. If he had stopped there, there would have been no error. But he went further and said, "But the court always gives great weight to the recom-

mendations of the trial jury." Therein lies the error.

The eminence of the trial judge in this case, his devotion to duty, and his well-known habits of fairness in the trial of criminal cases preclude all thought that he intended by the remark made to influence the jury in its deliberations. But his remarks were virtually an assurance that the jury could, by incorporating in their verdict a recommendation to mercy, reduce the penalty or in some way mitigate the punishment. It is so highly probable that such remark influenced the jury to the prejudice of the rights of the accused that we cannot sanction the proceeding. It probably resulted in a miscarriage of justice and constitutes a substantial departure from the well-recognized and established rules of procedure in criminal trials. Code of Criminal Procedure, art. 557.

4. The precise question here involved has not heretofore been passed on by this court. But the point has been before courts of last resort in other jurisdictions, in a number of cases.

The case of State v. Kiefer, decided in 1902, and reported in 16 S. D. 180, 91 N. W. 1117, 1118 (see 1 Ann. Cas. 268, 12 Am. Cr. Rep. 619), is on all fours with the case at bar. In that case, while the jury were out deliberating, a written communication was sent to the court, signed by the foreman, reading as follows: "Can the jury recommend the defendant to the mercy of the court?" Whereupon the trial judge wrote on the same piece of paper the following: "Yes; and I have made it an invariable rule to follow such recommendations," and returned the paper to the · jury. No other communication took place be-

tween the jury and the court. There is scarcely any difference at all between what the court told the jury in that case and what it told the jury in the case at bar. There he said he had made it an invariable rule to follow such recommendations. Here he told them he *always gave great weight* to such recommendations. In that case the Supreme Court of South Dakota, speaking of the proceeding, said:

"The answer to the question, while not strictly in the nature of an instruction or charge by the court, was nevertheless information conveyed to the jury, while deliberating upon their verdict, calculated to influence them. It will be observed that the court informed the jury that he had made it an invariable rule to follow the recommendations of the jury. Such a statement to the jury in a doubtful case might reasonably be presumed to influence the jurors in arriving at their verdict. * * * It is true that in the case at bar the trial judge did not distinctly agree, in terms, that the jury could depend on the clemency of the court; but the language used by him was, in effect, an agreement or statement that the jury could rely upon the clemency of the court. The learned judge said. 'I have made it an invariable rule * * * to follow such recommendation.' The jurors might very naturally conclude from the language used that they could rely upon him to extend clemency to the accused in case he should be convicted, and it might have the effect to induce the jurors to disregard any reasonable doubts they might have as to the guilt of the accused. Jurors, in the discharge of their duties, have nothing to do regarding the punishment to be inflicted upon the ac-

cused, as the extent of the punishment is left entirely to the discretion of the court, within certain limitations prescribed by statute. And while it is the duty of the court to instruct the jury upon the law of the case, it should not in any manner attempt to influence its deliberations, and the court should be exceedingly careful to refrain from all expressions of opinion that might be calculated to influence the minds of the jurors. Undoubtedly the learned circuit court, in replying to the request of the foreman of the jury, was actuated by no improper motive, but the proceeding is a dangerous one, and cannot be sanctioned by this court."

In McBean v. State, 83 Wis. 206, 53 N. W. 497, 498, the jury, while out deliberating, sent the following inquiry to the court:

"If we bring in a verdict of guilty, can we depend on the clemency of the court?"

The court responded in substance that they could. In reviewing the case, the Supreme Court of Wisconsin said:

"The question put by the jury to the trial judge in the case at bar was, in and of itself, harmless. The error consists of the promise made by the trial judge to the jury, to the effect, that if they found McBean guilty, they might rely upon him to extend the clemency of the court to the prisoner. It sufficiently appears from the verdict returned that the jury did rely upon such promise. The promise thus secured was well calculated to overcome reasonable doubts, and coerce an agreement for conviction. It was an unauthorized interference with the deliberations of the jury."

In State v. John Kernan, 154 Iowa, 672, 135 N. W. 362, 363, 40 L. R. A. (N. S.) 239,

the jury had been out all night. They came into court, and stated that they could not agree, and wanted to know if they could recommend the defendant to the mercy of the court. The court informed them that, "while it is not usual, and some of the judges objected to a recommendation, it didn't, and they might do so, and he would consider such recommendation."

The jury then retired, and later in the day returned a verdict of guilty, and recommended "the clemency of the court and that the sentence be made as light as possible." The appellate court, in reviewing the case, said:

"Though doubtless not so intended, what occurred was well calculated to influence the verdict of the jury. Indeed, that the court's response would be so used was to be inferred from the inquiry. As contended, no promise was made save that the 'recommendation would be considered,' but, from what was said, the jury might well have understood that it would be favorably considered, and at least that it would be weighed in pronouncing judgment. It amounted to holding out an inducement to the jury to agree upon a verdict."

In some of the states there are statutes especially authorizing juries in criminal cases to recommend the prisoner to mercy. In others, including Louisiana, there is no such statute. In those states where there are no such statutes, the courts hold generally that it is not error for the trial court to inform the jury, when such inquiry is made, that they may recommend mercy, but that the safe rule to follow in such instances is for the court to further say to the jury that, while they may do so, yet it is entirely discretionary with the court whether such recommendations be regarded in fixing the punishment. That is the rule generally followed by trial judges in this state, and there is no reason why it should be condemned.

On the contrary, it is generally held that, if the court by any remark or intimation leads the jury to believe that, by incorporating in their verdict a recommendation to mercy, the punishment will be reduced, their verdict is thereby rendered invalid. The reasons for so holding are clear and manifest. We think the remarks made by the judge in this case were well calculated to and probably did influence the jury in rendering its verdict.

For the reasons assigned, the verdict and sentence in this case are set aside, and it is ordered that the case be remanded for retrial as the law directs.

OVERTON, J., dissents and indicates reasons.

LAND and BRUNOT, JJ., dissent.

OVERTON, Justice (dissenting).

The remark of the court "that it always gave great weight to the recommendations of the jury" should not be given the effect of annulling the verdict. The remark did not involve a comment on any fact pertaining to the guilt or innocence of the accused. This is apparently conceded. It did not involve a promise on the part of the judge, or even an intimation by him, that, if the jury recommended mercy, the court, in this particular case, would show mercy in pronouncing sen-

tence. All that the jury were told is that the court always gave great weight to the recommendations of juries.

Since juries are permitted in this state to make recommendations, it is the manifest duty of judges to give such weight to their recommendations, that is to say, not to treat their suggestions of mercy with indifference, but to give weight to them, namely, to give their recommendations careful consideration before pronouncing sentence. This is all that the words of the judge conveyed to the jury.

There was no danger, it seems to me, that any juror could construe this into meaning that, if he surrendered any reasonable doubt which he might entertain as to the guilt of the accused, the judge would show mercy to the accused, if the jury recommended mercy. The moment that such a construction, which it seems to me is imaginary, occurred to a juror, there would also occur to him the instruction that is always given to juries, and which is implanted in the breasts of the people of this state, that, in the event they entertained a reasonable doubt as to the guilt of the accused, they should acquit. The two conflicting thoughts would force upon the juror the true construction, to wit, that the court always considers carefully the recommendations of jurors before rejecting them.

The Kiefer Case cited in the majority opinion is not at all pertinent to this case. There the judge instructed the jury that *he had made it an invariable rule to follow such recommendations*, which was as much as to say that he would follow such a recommendation in that case. The McBean Case also is not

pertinent here, for the court there substantially told the jury that it would follow a recommendation for mercy. The Kernan Case, also cited in the majority opinion, in my opinion should not be followed in this jurisdiction, since it does not seem to rest upon correct principles.