447 So.2d 1145 (1984)
STATE of Louisiana, Plaintiff-Appellee,
v.
Jessie James FREEMAN, Defendant-Appellant.
No. Cr83-407.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
Writ Denied May 4, 1984.
*1149 Anthony Walker, Saunders & Walker, Ville Platte, for defendant-appellant.
Richard W. Vidrine, Asst. Dist. Atty., Ville Platte, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
GUIDRY, Judge.
Defendant, Jessie James Freeman, was originally charged by grand jury indictment with the first degree murder of Offery Wilson and the attempted first degree murder of Felton Roberts, violations of LSA-R.S. 14:30, 14:30.1 and 14:27 respectively. Subsequently, the State filed an amended bill of information charging the defendant with second degree murder, a violation of LSA-R.S. 14:30.1 and attempted second degree murder, a violation of LSA-R.S. 14:30.1 and 14:27.
At trial, the twelve person jury found the defendant guilty of second degree murder and attempted manslaughter by a vote of 10 to 2 on count number 1 and 11 to 1 on count number 2. The trial judge sentenced the defendant to life imprisonment without benefit of probation, parole or suspension of sentence for the second degree murder conviction and a term of six years at hard labor for the attempted manslaughter conviction with the sentences to run concurrently.

FACTS
On September 30, 1982, the defendant, Jessie James Freeman, after attending a Ville Platte high school athletic event went to a bar by the name of Joe's Place located on Dr. Carver Street, in an area known as the "front" in Ville Platte. There he was approached by Offery Wayne Wilson who *1150 directed hostile statements to the defendant. The defendant declined to fight and shortly thereafter left Joe's Place and proceeded across the street to Soileau's Club. At Soileau's Wilson again approached the defendant, directing hostile statements to him. The defendant declined a fight with Wilson, who left the club. As closing time approached, the lights came on and Freeman proceeded to exit the club. Amongst the crowd gathered on the street after the clubs closed, were the defendant, Felton Roberts and Offery Wayne Wilson. The circumstances surrounding this last encounter are in dispute. However, the defendant admittedly drew his knife and stabbed Wilson and then cut Felton Roberts. Offery Wayne Wilson died as a result of the stab wounds inflicted by Jessie James Freeman.
Defendant appeals his conviction of the second degree murder of Offery Wayne Wilson and his conviction of the attempted manslaughter of Felton Roberts on the basis of the following seven assignments of error:
1. The trial court erred in that defendant was prejudiced by the State's failure to comply with the disclosure requirements of Article 716 of the Code of Criminal Procedure.
2. The trial court erred in that certain evidence in support of defendant's case was improperly held to be inadmissible.
3. The trial court erred in that the defendant was prejudiced by the State's failure to comply with the disclosure requirements of Article 719 of the Code of Criminal Procedure.
4. The trial court erred when it improperly instructed one of the defendant's witnesses to control his manner upon the stand thereby hampering the witness's presentation of his testimony.
5. The trial court erred in that improper redirect examination by the State upon one of its own witnesses was permitted by the court to the prejudice of the defendant.
6. The trial court erred in that the verdicts of the jury are inconsistent with the law and evidence as presented during the trial.
7. The trial court erred in that the two verdicts returned by the jury were inconsistent with each other and should not be permitted.
Assignment of error no. 4 was not briefed and, consequently, is deemed abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

ERRORS PATENT
Although defendant makes no complaint with regard to the method employed by the State in instituting this prosecution, we deem it necessary to make the following observations.
The record reflects that the defendant was initially charged with first degree murder and attempted first degree murder by a grand jury indictment. The indictment was dated October 25, 1982. On January 24, 1983, the State amended the charge to second degree murder and attempted second degree murder. The amendment took place by bill of information before the trial began.
LSA-C.Cr.P. Art. 382 provides in pertinent part:
"A prosecution for an offense punishable by death, or for an offense punishable by life imprisonment, shall be instituted by indictment by a grand jury. Other criminal prosecutions in a district court shall be instituted by indictment or by information."
Second degree murder is a crime punishable by life imprisonment and, therefore, is a crime the prosecution of which must be instituted by grand jury indictment. State v. Davis, 385 So.2d 193 (La. 1980). Consequently, the issue presented here is whether the amendment by bill of information was proper when institution of a second degree murder charge must be made by a grand jury indictment.
In State v. Davis, supra, the district attorney amended an indictment from first degree murder to second degree murder. The Louisiana Supreme Court held that this was permissible. The court did not *1151 find that the amendment amounted to a reinstitution of prosecution. Hence, the defendant's constitutional right to have the crime he was charged with instituted by a grand jury indictment was not violated.
The Court found it necessary to distinguish their holding in Davis from the case of State v. Donahue, 355 So.2d 247 (La. 1978). In Donahue, the court found error in the district attorney's nolle prossing a grand jury indictment for the crime of first degree murder and a later reinstitution of prosecution by bill of information charging the defendant with the crime of second degree murder.
The instant case is very similar to State v. Davis, supra, the only difference being that the amendment of the initial charge in this case took place by bill of information instead of by oral motion in open court in the presence of the accused and entered on the minutes of court prior to the beginning of trial. The grand jury indictment was not nolle prossed in this case as occurred in State v. Donahue, supra.
The elements of second degree murder applicable to the defendant's case are also applicable to a first degree murder charge, i.e., "specific intent to kill or to inflict great bodily harm." The grand jury indicted the defendant for first degree murder, therefore when the grand jury considered the evidence relevant to the elements of first degree murder and decided to indict defendant with that crime, it necessarily considered the evidence relevant to all the essential elements of second degree murder. State v. Davis at 197.
Although the issue presented appears to be res nova, the rationale employed by our Supreme Court in State v. Gilmore, 332 So.2d 789 (La.1976) prompts us to conclude that the procedure followed by the State in the instant case, i.e., the filing of a bill of information charging the defendant with the crime of second degree murder and his re-arraignment on that charge, amounts to nothing more than a formal amendment of the grand jury indictment which charged him with the crime of first degree murder and which was still extant. We find the following quote from State v. Gilmore, supra, at page 794 persuasive:
"Defendant concedes that without amending the indictment the State could have abandoned the charge of murder in the first degree and proceeded to trial on the lesser charge of murder in the second degree. La.C.Cr.P. art. 61; State v. Doucet, 177 La. 63, 147 So. 500 (1933); State v. Edwards, 287 So.2d 518 (La. 1973). In State v. Doucet, supra, the accused was charged with murder but the State abandoned that charge and elected to go to trial on the charge of manslaughter. This Court approved the procedure, saying:
"* * * The charge of manslaughter is included in that of murder, being a crime of the same generic class as murder, but one of a lesser degree. In such cases the state may abandon the charge of the greater crime and proceed with the prosecution of the lesser, and no formal amendment of the indictment is necessary for that purpose. A motion in open court in the presence of the accused and entered on the minutes prior to the beginning of the trial is sufficient. State v. Bourgeois, 158 La. 713, 104 So. 627. State v. Kelly, 176 La. 405, 146 So. 6." 147 So. at 501.
Likewise, the charge of murder in the second degree is a charge of the same generic class as murder in the first degree, although it is a lesser grade of the offense. A verdict of guilty of second degree murder is responsive to the charge of first degree murder. La.C. Cr.P. art. 814, as amended by Acts 1973. Under these circumstances, a motion to proceed on the reduced charge made in open court in the presence of the accused and entered on the minutes would have been sufficient to amend the indictment. We perceive no substantial difference in the procedure followed by the district attorney in this case and think it would be inconsistent to hold that he could not accomplish *1152 formally what could have been done without formality. We therefore conclude that the district attorney was inherently empowered to amend the indictment to charge a lesser included offense, although there was no specific codal authorization for this procedure." (Emphasis ours)
The procedure employed by the State in this case, although irregular, was accomplished in open court in the presence of the accused and entered in the minutes and amounted to nothing more than a formal amendment of the grand jury indictment. For these reasons, we find no error in the method employed by the State in the institution of this prosecution.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial judge committed reversible error in failing to exclude certain evidence as a sanction for the State's failure to comply with the disclosure requirements of Article 716 of the Louisiana Code of Criminal Procedure.
Defendant contends he was prejudiced by the State's failure to comply with the disclosure requirements of Article 716 of the Code of Criminal Procedure. In particular, the defendant argues that the State failed to comply with LSA-C.Cr.P. Art. 716(B).
Defense counsel filed a motion for discovery on November 16, 1982. Paragraph two of the motion requested the following:
"The State of Louisiana to inform defendant of the existence of any oral confessions or statements of any nature, made by defendant, which the state intends to offer in evidence at the trial, with the information as to when, where and to whom each oral confession or statement was made."
The language used in this paragraph is synonymous with LSA-C.Cr.P. Art. 716(B). The trial judge ordered the State to respond to defendant's discovery motion by December 3, 1982.
The State replied to the motion for discovery by responding to paragraph two as follows:
"The defendant stated to Officer Joe Toussant at the Ville Platte Police Department at about 1:40 a.m. on October 1, 1982, in essentially these words `I cut them because they were prouting me'." (sic)
No other answers were ever supplied in reply to this motion.
At trial, through direct examination by the State, Patrick Alfred, Robert Fontenot and Kathleen Durgin testified as to certain statements made by the defendant at the scene of the incident. This testimony was admitted over defendant's objection to their admissibility on the basis of the State's failure to comply with the motion for discovery. The testimony complained of is as follows:

TESTIMONY OF PATRICK ALFRED
"Q. When he (the defendant) came back out, what did he do?
A. He had a knife in his hand and he toldhe had his knife like that and he say, `If anyone of ya'll tries something, I'm going to kill ya'll.'
Q. What did he say? Say it again.
A. He says like it to the crowd `If anyone of ya'll tries something, I'm gong to kill ya'll.'"

TESTIMONY OF ROBERT FONTENOT
"Q. After that happened, what did Jessie James Freeman do?
A. Went up to Totie and hollered, `You too?' ..."
(Totie is a nickname for Felton Roberts. This testimony is to the effect that the statement was made just prior to stabbing Felton Roberts.)

TESTIMONY OF KATHLEEN DURGIN
"Q. What happened to Felton Roberts, if anything? *1153 A. Well after he had got through with Wayne, he say, `Where the other nigger at?'"
In arguing against the admissibility of the above testimony, the defendant relied on a previous ruling of the trial judge. On a motion by the defendant, the trial judge ruled that evidence of certain other statements made to certain police officers could not be admitted at trial for any purpose because of the State's failure to comply with the provisions of Article 716(B), even though notice of the State's intention to introduce the statements had been furnished the defendant on the day of trial pursuant to LSA-C.Cr.P. Art. 768.
The State on the other hand contended that the statements at issue in this assignment of error were not discoverable for the following reasons: (1) they constituted part of the res gestae; (2) they were made prior to the commission of the crime and therefore were not inculpatory statements; and, (3) they were not made to police officers. The trial judge overruled defendant's objection without comment.
LSA-C.Cr.P. Art. 716 provides as follows:
"A. Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph or otherwise reproduce any relevant written or recorded confession or statement of any nature, including recorded testimony before a grand jury, or copy thereof, of the defendant in the possession, custody, control, or knowledge of the district attorney.
B. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the existence, but not the contents, of any oral confession or statement of any nature, made by the defendant, which the district attorney intends to offer in evidence at the trial, with the information as to when, where and to whom such oral confession or statement was made.
C. Upon motion of the defendant, the court shall order the district attorney to inform the defendant of the substance of any oral statement which the state intends to offer in evidence made by the defendant, whether before or after arrest, in response to interrogation by any person then known to the defendant to be a law enforcement officer."
For the following reasons, we find merit in the defendant's contention that the State failed to comply with the discovery provisions of Article 716(B).
The fact that the statements may form part of the res gestae is of no moment. The res gestae rule has its existence as an exception to the hearsay rule. Contrary to the State's argument, a defendant is entitled to discover the existence, if not the contents, of res gestae statements under LSA-C.Cr.P. Art. 716(B). State v. Jones, 408 So.2d 1285 (La.1982).
In its contention that the statements were made prior to commission of the crime and are therefore not discoverable under Article 716(B), the State apparently mistakenly relies on the jurisprudence limiting the term "inculpatory statement" as used in LSA-C.Cr.P. Art. 768 to admission of facts made by the defendant after the crime has been committed. The term "statement of any nature" as used in LSA-C.Cr.P. Art. 716(B), which is clearly a broader term, has not been so limited. We therefore find no merit to this argument.
The State's final contention is that Article 716(B) applies only to statements made to police officers, relying on State v. Hooks, 421 So.2d 880 (La.1982). In State v. Hooks, supra, the Louisiana Supreme Court stated as follows:
"The State is not required to give notice or to divulge the contents of an oral statement made by the defendant to a private citizen when the State plans to use that evidence at trial. State v. Joseph, supra." at 885.
This quote is not a correct statement of the holding in State v. Joseph, 379 So.2d 1076 (La.1980). In our opinion, this statement in State v. Hooks, supra, is inadvertently *1154 overbroadly stated dicta. Under the holding in State v. Quimby, 419 So.2d 951 (La.1982) and State v. Bonanno, 373 So.2d 1284 (La.1979), although defendant is not entitled to discover the substance of statements made to a private citizen, on proper motion, defendant is entitled to discover the existence of the oral statement with corresponding information relative to when, where and to whom such statement was made.
LSA-C.Cr.P. Art. 729.5 provides sanctions for a violation of the discovery rules. It provides in pertinent part as follows:
"A. If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate."
This article authorizes a wide range of alternative sanctions for failure of a party to comply with court ordered discovery. The imposition of these sanctions is within the discretion of the court and therefore a showing of prejudice by virtue of the court's adverse ruling is required before reversal of a conviction is in order. State v. Norwood, 396 So.2d 1307 (La.1981). We must therefore determine whether and to what extent the defendant may have been prejudiced by the State's failure to provide the discovery to which he was entitled.
In the instant case, the defendant admitted that he stabbed Wilson and Roberts and there were numerous eyewitnesses conclusively establishing that fact. The only material issue involved in this case is the proof of lack of self defense or of provocation. The importance of the statements in question are therefore limited to the events leading up to, and the circumstances surrounding, the stabbings for a determination of self defense or provocation. In this connection, we note that although the import of the statements in question are somewhat ambiguous and that their character is not necessarily inculpatory, a jury could infer, at least from the last two statements, a lack of provocation or of self defense. Nonetheless, the record indicates that the defense was prepared and did present evidence which contradicted any adverse inference which might be drawn from the statements in question. Even if the impact of the statements is adverse to the defendant's case, it does not necessarily follow that prejudice resulted from the State's failure to notify the defendant of their existence and the State's intent to use them. As aforestated, the defendant was not entitled to discovery of the substance of the statements but only discovery of their existence with corresponding information relative to when, where and to whom such statements were made.
The defendant contends that he was prejudiced, in that, the existence of such statements came as a complete surprise to the defense and that the defense was lulled into a misapprehension of the strength of the State's case. In support of this argument, defendant relies on State v. Davis, 399 So.2d 1168 (La.1981), in which the court was concerned with the effect the failure to comply might have upon the defendant's evaluation of the strength of the State's case and the possibility of the defendant entering into a favorable plea bargain. We find it highly unlikely that the disclosure by the State of the mere existence of statements made by the defendant to the crowd at the time and place of the stabbing, which the State intended to produce, would have made one iota of difference in defendant's decision to enter into a plea bargain.
In Davis, supra, the evidence which the State had improperly failed to disclose consisted of concrete evidence, fingerprint evidence, which constituted an important link in the State's circumstantial evidence case. In addition, the court relied on the fact that *1155 lack of discovery prevented the defendant from securing his own fingerprint expert. Defendant does not support any other way in which discovery would have altered the preparation of his case and we can think of none. As aforestated, the record reflects that defendant was prepared and did offer evidence contradicting the statements in question. We therefore find no reversible error in the trial judge's erroneous ruling.

ASSIGNMENT OF ERROR NO. 2
Defendant contends that the trial judge erred in excluding evidence which was favorable to his defense. In particular, the defense sought to establish, through cross examination of one of the State's witnesses, the existence of occasional "bad blood" between his neighborhood and the neighborhood where the victims resided. The defendant argues that the evidence was offered to establish the tempo of the crowd and to show that hostility was directed at the defendant not only from the victims but also from the surrounding crowd. This evidence he suggests would have supported his position that he was acting in self-defense.[1]
To be admissible in a criminal proceeding, evidence must be relevant to a material issue. LSA-R.S. 15:435. Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and intent. Facts necessary to be known to explain a relevant fact, or which supports an inference by such fact, are admissible. LSA-R.S. 15:441. The relevancy of evidence is determined by the purpose for which it is offered. LSA-R.S. 15:442.
The following line of questions and objections indicates the evidence that the trial judge held inadmissible:
"Q. Okay. Now, you live on West Peach Street. That's on the south side of town?
A. Yeah.
Q. And that's close to the front?
A. No.
Q. Is it what they call the woods?
A. Yeah.
Q. You live in the woods, huh? Now, you hang out around the front. Is that correct?
A. Well, every now and then.
Q. Every now and then. But usually, when you go out, you hang out around the front, though, huh?
A. Yeah.
Q. Okay. Now, uh, Jessie's from across town. That's correct?
A. Yeah.
Q. All right. Sometimes there'sis there a little bit of bad blood between the people from across town and people in the woods?
OBJECTION:
BY MR. ROZAS, Assistant District Attorney:
Objection, Your Honor, as to bad blood between the two (2) sections of town. It's irrelevant to this.
BY THE COURT:
Sustained.
CONTINUED BY MR. WALKER:
Q. Sometimes when there's a fight in the woods and uh, there's somebody from the woods, that neighborhood, and there's somebody from across town, who does the crowd pull for?
OBJECTION:
BY MR. ROZAS, Assistant District Attorney:
Same objection, Your Honor. Irrelevant.
BY THE COURT:
Sustained.
BY MR. WALKER, counsel for Defendant:
Your Honor, I'm trying to show that the tempo of the crowd that night, *1156 though, what was going on and what was being said prior to this type of questioningline of questioning.
BY MR. ROZAS, Assistant District Attorney:
The crowd's not on trial. Jessie James Freeman is, Your Honor.
BY THE COURT:
I've already ruled."
A trial judge's determination regarding the relevancy of offered testimony is entitled to great weight and should not be overturned absent a clear abuse of discretion. State v. Stramiello, 392 So.2d 425 (La. 1980).
Our inquiry is thus whether the trial judge abused his discretion in finding the particular evidence excluded irrelevant. Defendant's contention is that testimony from a third person as to the occasional existence of bad blood between people from across town and people from the "woods" would tend to show that the particular crowd that night was hostile and defendant's apprehension of losing his life or receiving great bodily harm was reasonable. We find the relevancy of this evidence, if any, to be extremely weak and remote.
When a defendant pleads self-defense, his state of mind becomes a material issue. Here the question was not asked of the defendant but of a third person and did not concern the particular crowd that night, but rather some nebulous group of people known as a neighborhood.
We also note that more direct evidence that the particular crowd including the victims, prior to the stabbings exhibited hostility toward the defendant because he was from across town, was admitted at trial. This evidence had far more probative value to defendant's claim of self-defense than evidence of "bad blood" among certain neighborhoods. Consequently, it cannot be said that the trial judge abused his discretion in ruling this evidence irrelevant.

ASSIGNMENT OF ERROR NO. 3
Defendant urges that the trial judge committed reversible error in admitting the testimony of Dr. McCormick, a pathologist who conducted the autopsy on the body of Offery Wilson, over defendant's objection that the State failed to furnish the autopsy report pursuant to LSA-C.Cr.P. Art. 719, which provides as follows:
"Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial."
The record reveals that defendant requested discovery of evidence listed under Article 719 and the State was ordered to comply. The State's response failed to include the autopsy report or its results.
The defendant contends that the State's failure to include the report or its results constitutes a violation of Article 719. The State, on the other hand, contends that discovery under Article 719 is applicable only when the State intends to evidence the results by introduction of the report and not by the testimony of the examiner or tester.
This argument was presented in State v. Arnaud, 412 So.2d 1013 (La.1982), which is relied on by the defendant. However, a reading of that case indicates that the court did not hold that the State's action in that case was a violation of Article 719. The court sidestepped the issue and assumed a violation for the purpose of addressing the issue of the remedies available under LSA-C.Cr.P. Art. 729.5(A).
We see no reason to sidestep the issue. Under Article 719, the result or reports of physical examinations and/or scientific tests made in connection with or material to the case that are exculpatory or intended for use at trial are clearly subject *1157 to discovery. However, LSA-C.Cr.P. Art. 719 does not require the State to present an item of evidence to the defendant but instead requires that the State allow defendant access to the covered information. State v. Williams, 438 So.2d 1212 (La.App. 3rd Cir.1983).
We consider that the proper response to a motion for discovery pursuant to Article 719 is a statement informing the defendant of the existence of the covered information and its accessibility. In this respect, we conclude that the State's failure to disclose the existence of the autopsy report was a failure on the part of the State to comply with the order issued pursuant to defendant's motion for discovery. However, as aforestated in assignment of error number 1, the failure of the State to comply with court ordered discovery will not automatically require a reversal. The circumstances of the case must be examined to determine whether defendant was prejudiced and if the trial judge abused his discretion. For the reasons which follow, we find that the defendant suffered no prejudice as a result of the State's failure to inform defendant of the existence of the autopsy report.
The defendant asserts in brief that the results of the autopsy contained exculpatory evidence, in that, through Dr. McCormick's testimony, it was established that two of the wounds could have been inflicted by one stab. Besides the fact that this is opinion testimony and not technically the result of the autopsy, defendant cannot complain that he was prejudiced by the introduction of exculpatory evidence. State v. Williams, supra.
Defendant also asserts the same prejudice alleged in assignment of error number 1, i.e., he was prevented from properly evaluating the strength of the state's case. Suffice it to say that there is nothing in the record which would support this conclusion.
Further, there is no indication in the record that any attempt was made by defendant to obtain a copy of the coroner's autopsy report or that he was denied access thereto. In some cases, the failure to inform the defendant of the existence of scientific tests or physical examinations might effectively prevent access by the defendant to pertinent information. This is not one of those cases. By statute, coroners are required to perform an autopsy in any death case, where there is a reasonable probability that a criminal statute has been violated, LSA-C.Cr.P. Art. 102, and the coroner is required to make a written report to the district attorney within ten days after the completion of his investigation. LSA-C.Cr.P. Art. 105. Therefore, any adverse effect resulting from Dr. McCormick's testimony is attributable to the defendant's failure to make an effort to obtain a copy and not to the State's failure to inform him of that which he certainly knew or should have known existed. The trial judge's refusal to exclude the evidence was a proper exercise of his discretion.

ASSIGNMENT OF ERROR NO. 5
Defendant urges the trial court erred in allowing the State to conduct improper redirect examination of one of its witnesses to his prejudice. Defendant contends that the State was allowed to elicit testimony from Officer Jack Aucoin on redirect that was not gone into on cross-examination. The record reveals that the question objected to was whether the defendant had made a statement to the police, after being taken into custody, about Offery Wilson's telling the defendant that "I have something better than your knife." Over objection of defense counsel, the officer replied that the defendant had made no such statement to him.
The pertinent provision on this issue is LSA-R.S. 15:281. It provides:
"The redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect."
*1158 A review of the defense counsel's cross-examination of the officer indicates that, although the particular statement asked on redirect was not gone into on cross-examination, there were a number of questions asked about the defendant's statements to the officer about what had transpired during the incident in question. Hence, it appears that the redirect examination was confined to the subject matter of the cross-examination as mandated by LSA-R.S. 15:281. The trial court has great discretion in controlling the redirect examination of witnesses which will not be overturned on appeal absent an abuse of discretion. State v. Chapman, 410 So.2d 689 (La.1982). The record does not reveal an abuse of the great discretion accorded the trial judge. Consequently, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 6
Defendant contends the verdicts of the jury were inconsistent with the law and evidence presented during the trial. Basically, defendant is asserting that the State failed to prove the essential elements of the crimes beyond a reasonable doubt.
A claim of insufficient evidence is judged by whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Brown, 414 So.2d 726 (La.1982); Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
In particular, the defendant argues that in viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the State had proven lack of self-defense or provocation beyond a reasonable doubt.
It is clear that on both the conviction of second degree murder and attempted manslaughter the State has the entire and affirmative burden of proving beyond a reasonable doubt that the homicide (or attempted homicide) was not perpetrated in self-defense. State v. Savoy, 418 So.2d 547 (La.1982). However, defendant apparently argues that on the conviction of second degree murder, the State also has the affirmative burden of proving that the homicide was not perpetrated in the heat of passion. We do not agree.
The presence of passion or provocation is not an essential element of the crime, rather it is a mitigatory factor in the nature of a defense. State v. Temple, 394 So.2d 259 (La.1981).
In State v. Peterson, 290 So.2d 307 at 310 (La.1974), the Supreme Court determined that the presence of passion is in the nature of a defense and that the additional "element" of lack of passion need not be proven by the State in a murder prosecution. In so concluding, the court stated:
"Additionally, a review of our manslaughter statutes (that statute in effect at the time of this defendant's trial and the new manslaughter statute) reveals that the "sudden passion" or "heat of blood" provisions operate in a mitigatory fashion in a murder prosecution, not a great deal unlike provisions in the criminal law of other jurisdictions1 where such factors are considered to be "affirmative defenses" to a charge of murder. Our manslaughter statute, R.S. 14:31, provides: "* * * Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed * * *." (Emphasis supplied.)
The obvious difference between Connecticut's "extreme disturbance" defense to murder and our "passion" "defense" is that in this jurisdiction "passion" may be inferred by the jury from the evidence adduced upon trial by the State, there being no requirement in our law that these factors be affirmatively established by the defendant. Nevertheless, it is instructive to view this factor, which in our jurisdiction is solely within the province of the jury as ultimate judges of law and fact, as a factor in the nature of a defense to the crime of murder." (footnote omitted)
*1159 The remaining inquiry is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the homicide was not perpetrated in self-defense. The evidence concerning the degree of apprehension the defendant faced was conflicting. The jury's determination depended, on the most part, on its assessment of the credibility of the witnesses. There was testimony that defendant walked away from the scene and returned after conferring with his brother before proceeding to punch and stab Wilson and Roberts. The record, therefore, supports a conclusion that the defendant could have escaped the danger by fleeing from the scene once he had walked to the side of the club to meet his brother instead of returning. Although there is no unqualified duty to retreat, the possibility of escape is a recognized factor in determining whether or not a defendant has a reasonable belief that deadly force was necessary to avoid the danger. State v. Brown, 414 So.2d 726 (La.1982). It appears that the State presented sufficient evidence for one to conclude that the defendant could have saved himself from the danger without resorting to deadly force. State v. Brown, supra.
For these reasons, we find no merit in this assignment of error.

ASSIGNMENT OF ERROR NO. 7
Defendant contends the two verdicts returned by the jury were inconsistent with each other and should not have been permitted. He argues that the two verdicts arise from the same event and therefore should have been consistent.
In State v. Watson, 397 So.2d 1337 (La. 1981), the Louisiana Supreme Court stated:
"Normally, jurors' reasoning processes may be assailed only on the ground that the evidence adduced at trial was legally insufficient to support their finding of guilt; other inquiries into the deliberations of a properly instructed jury are generally frowned upon (as, for example, where the jury returns a lesser verdict despite the apparent sufficiency of the evidence to support conviction of a greater offense)."
As noted in addressing assignment of error number 6, it appears the State adduced sufficient evidence at trial to support verdicts of guilty of second degree murder and attempted second degree murder. In light of State v. Watson, supra, the jury's return of a verdict of guilt of attempted manslaughter instead of attempted second degree murder was well within their province. Consequently, this assignment of error lacks merit.
For the above and foregoing reasons, the defendant's convictions and sentences are affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs and assigns written reasons.
DOMENGEAUX, Judge, concurring.
I disagree with the majority opinion insofar as it suggests that Article 716(B) applies to private citizens. The Louisiana Supreme Court has made it clear that it does not. State v. Hooks, 421 So.2d 880 (La. 1982); State v. Joseph, 379 So.2d 1076 (La. 1980).
Additionally, as I have repeated in many previous cases, I do not feel that the Jackson v. Virginia rationale should be applicable in review of criminal cases in Louisiana.
NOTES
[1] LSA-R.S. 14:20 provides:

"A homicide is justifiable: (1) when committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger ...".