430 So.2d 114 (1983)
STATE of Louisiana, Appellee,
v.
Lonnie Ray WILLIAMS, Appellant.
No. CR82-614.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1983.
Rehearing Denied May 13, 1983.
Writ Denied June 10, 1983.
Alcide J. Gray and M. Joy Clemons, Gray, Clemons & Spruel, Lake Charles, for appellant.
Leonard K. Knapp, Jr., Dist. Atty., and Larry Regan, Asst. Dist. Atty., Lake Charles, for appellee.
Before FORET, CUTRER and KNOLL, JJ.
FORET, Judge.
Defendant, Lonnie Ray Williams, was indicted by a grand jury on one count of manslaughter. Rejecting a plea bargain with the District Attorney's office, defendant pleaded not guilty and was tried by jury which found the defendant to be guilty as charged. A pre-sentence investigation was ordered by the trial judge, who subsequently sentenced defendant to fifteen (15) years at hard labor. This appeal followed wherein two assignments of error have been perfected:
(1) The trial judge erred in "not properly designating the reasons for sentencing as required by LSA-C.Cr.P. Article 894.1"; and,
(2) The trial judge erred in imposing an excessive sentence.

FACTS
This Court has not been provided with a transcript of the testimony adduced at trial, and therefore the facts must necessarily be gleaned from defendant's statement given shortly after his arrest on the day of the crime in question. There is no doubt that defendant fired the fatal bullet that resulted in the death of Junius Green, Jr.
*115 Defendant's statement reveals that he was staying at a local motel in Lake Charles on the morning of July 26, 1980. Having returned to the motel following an outing with some friends, defendant confronted a black female in his room. He left this mysterious stranger briefly, but upon returning, discovered her absence as well as the disappearance of approximately $120 which he had left in the pocket of his pants. The defendant had begun to search for his departed "guest", when he noticed the male victim, age 21, observing him from a distance. This led defendant, then age 24, to return to his room in order to retrieve a .38 caliber revolver. Shortly thereafter, he located the black female, whom he had recently encountered, in a nearby room. When she failed to open the door, defendant "pushed on the door and the door facing came off".
Defendant waited in the female's room for the return of the victim who was purported "by the female" to have defendant's purloined funds. Upon the victim's arrival in the room, defendant pointed his gun at him and demanded the return of his money. When the victim tried to flee, the gun "went off" hitting Green in the head. He apparently died that day. Defendant disposed of the gun (which was later recovered) and was in his own room with the female when the police arrived and arrested him for Green's murder.
The State has acknowledged in its brief that defendant was offered the opportunity to plead guilty to negligent homicide, which carries a maximum imprisonment term of five years at hard labor. LSA-R.S. 14:32. The defendant refused the offer and asserted his innocence in demanding a jury trial on the manslaughter charge. He was found guilty on that charge and subsequently sentenced to a prison term of fifteen years at hard labor. It is important to note that defendant does not challenge the jury's finding. Rather, his assignments of error are directed at the sentence imposed by the trial judge. The assignments of error presented assert that LSA-C.Cr.P. Article 894.1 was not properly complied with by the trial court, and that an excessive sentence was imposed. For the ease of analysis and the sake of clarity, these assignments are dealt with conjunctively.

ASSIGNMENTS OF ERROR NUMBERS 1 & 2
The crime of manslaughter is defined in LSA-R.S. 14:31, as follows:
"§ 31. Manslaughter
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed; or
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional misdemeanor directly affecting the person; or
(b) When the offender is resisting lawful arrest by means, or in a manner, not inherently dangerous, and the circumstances are such that the killing would not be murder under Articles 30 or 30.1.
Whoever commits manslaughter shall be imprisoned at hard labor for not more than twenty-one years."
That article provides for a maximum term of imprisonment of twenty-one years at hard labor. Defendant argues that his exposure to a possible term of fifteen years is an unconstitutionally excessive punishment. The word "possible" is used inasmuch as Section 31 does not prohibit his probation or parole at any time during his sentence.
The power of this Court to review a sentence alleged to be excessive arises from *116 Article 1, § 20 of the Louisiana Constitution of 1974. That provision provides as follows:
"§ 20. Right to Humane Treatment
Section 20. No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense." (Emphasis ours.)
State v. Sepulvado, 367 So.2d 762 (La.1979), and its progeny, have created the standard for review of excessive sentences. If the appellate court finds that the penalty is so disproportionate to the crime as to shock the senses of justice or if it is nothing more than the purposeless and needless imposition of pain and suffering, then the sentence may be deemed excessive. State v. Reed, 409 So.2d 266 (La.1982); State v. Bonanno, 384 So.2d 355 (La.1980). Other decisions have expressly required that the trial judge "individualize" the sentence to the offender and the offense. State v. Clay, 408 So.2d 1295 (La.1982).
In the instant case, defendant's sentence should be set aside and remanded to the lower court only if fifteen years of a possible sentence of twenty-one years for the crime of manslaughter is shocking to the senses of justice.
Article 894.1 of the Code of Criminal Procedure aids both the trial judge in the exercise of his broad discretion and this Court in reviewing sentences for excessiveness. That article reads as follows:
"Art. 894.1. Sentence guidelines; generally
A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:
(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence."
*117 Historically, the Louisiana Supreme Court has dealt uneasily with LSA-C.Cr.P. Article 894.1, e.g., some decisions have held that the trial court's failure to state its consideration of 894.1 did not necessitate reversal where the record substantiated the sentence imposed. State v. Hogan, 403 So.2d 1210 (La.1981); State v. Sims, 410 So.2d 1082 (La.1982). Others have remanded the sentence when the trial judge failed to follow the guidelines of LSA-C.Cr.P. Article 894.1. State v. Ezernack, 408 So.2d 907 (La.1981). These decisions understandably led the defendant to assert that the trial court's failure to designate the reasons set forth in LSA-C.Cr.P. Article 894.1 was reversible error.
However, a recent Louisiana Supreme Court decision authored by Justice Dennis has provided a resolution to the lower court's handling of this article by expressly holding that strict compliance with LSA-C. Cr.P. Article 894.1 is "not essential to the legality of a sentence". State v. Wimberly, 414 So.2d 666, 671 (La.1982). Wimberly notes that the previously remanded sentences for non-compliance with the provisions of LSA-C.Cr.P. Article 894.1 were prompted by the Louisiana Supreme Court's subjective belief that, due to an incomplete record, there was "a substantial possibility that the defendant's complaints of an excessive sentence had merit". 414 So.2d at 672. In the instant case, the record appears to support the sentence imposed by the lower court.
It is apparent that the trial judge did consider the guidelines of LSA-C.Cr.P. Article 894.1 prior to imposing sentence. His reasons for sentencing are set forth in the transcript provided this Court. Perhaps most significant was the lower court's belief that the defendant was guilty of the crime of second degree murder as opposed to the charge of manslaughter, of which he was convicted. Second degree murder is defined in LSA-R.S. 14:30.1, as follows:
"§ 30.1. Second degree murder
Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, armed robbery, or simply robbery, even though he has no intent to kill or to inflict great bodily harm.
Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence."
The punishment provided for perpetrators of that crime is life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. In order to sustain the trial judge's belief that the defendant was in fact guilty of the more serious homicide, a review of the entire transcript would be required. However, defendant's written statement does appear to support the possibility that he had a "specific intent to kill or to inflict great bodily harm", when he shot the victim.
Although the defendant was found guilty of the crime of manslaughter, it was not improper for the trial court to consider the defendant's actual conduct. State v. Lanclos, 419 So.2d 475 (La.1982). The trial judge has been afforded wide discretion in the imposition of sentences within statutory limits. State v. Williams, 412 So.2d 1327 (La.1982); State v. Abercrumbia, 412 So.2d 1027 (La.1982). He is charged with viewing every circumstance surrounding the offense committed, and he should impose a penalty fitting the defendant's actual conduct. Lanclos, supra, at 478.
After reviewing the provisions of LSA-C. Cr.P. Article 894.1, Judge Hood found only one to be applicablethe defendant had no prior criminal record. He accorded this fact weight by reducing defendant's sentence to six years less than the statutory maximum. As the trial judge could find no other mitigating circumstances for the unprovoked *118 taking of a human life, he refused to allow the defendant a lesser sentence. The possibility of parole and probation exists, and this has been considered an acceptable sentencing factor by the reviewing court. State v. Green, 418 So.2d 609 (La.1982). We see no reason to assess significance to the State's initial plea bargain offer to the charge of negligent homicide. The only offers of mitigation made by defendant are that he had no prior criminal record, that he had a steady employment history, and that he had not had a "prior history of propensity for violence".
Under the facts shown by the record, we do not find fifteen years at hard labor shocking to our sense of justice.

DECREE
For the above and foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.