438 So.2d 1212 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Frederick WILLIAMS, Defendant-Appellant.
No. CR83-26.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
Writ Denied December 9, 1983.
*1214 Charles Schrumpf, Sulphur, for defendant-appellant.
Leonard K. Knapp, Jr., Dist. Atty., and F. Wayne Frey, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOMENGEAUX, FORET and YELVERTON, JJ.
YELVERTON, Judge.
A jury found defendant, Frederick Williams, guilty as charged of the second degree murder of James Williams (no relation). He was sentenced to the mandatory life imprisonment provided by LSA-R.S. 14:30.1. On appeal, defendant relies upon four assignments of error.
FACTS
On the night of February 4, 1981, defendant and his girlfriend, Fe'Nita Bryant, befriended the victim, James "Pee Wee" Williams, by allowing him to spend the night with them in their room at Assunto's Motel in Lake Charles. The next morning, February 5, 1981, the defendant befriended Pee Wee further by loaning him the money to rent his own motel room. Later that morning, defendant discovered that his .38 caliber pistol was missing from his room and he suspected Pee Wee had taken it. Preparatory to his planned confrontation with Pee Wee concerning this suspicion, defendant borrowed a .32 caliber pistol from a neighbor. Thus armed, defendant went in search of Pee Wee and found him where he had registered in the same motel. Gun in hand, the defendant ordered Pee Wee out of his room and, after obtaining an admission from Pee Wee that the gun had been taken and already hocked, defendant shot the victim in the stomach. The victim died in the hospital a short time later.
The shooting was witnessed by Fe'Nita Bryant. Defendant claimed self-defense.
ASSIGNMENT OF ERROR NO. 1
It is contended by this assignment that the trial court erred in overruling defendant's objection to the following remarks made by the prosecutor in his opening statement:
"There's also a tape recording that you may or may not hear when Miss Bryant ran back into Patricia Johnson's room to *1215 tell them about the shooting. You may hear that tape recording."
The State did not attempt to introduce the tape at the trial.
The arguments on which this assignment of error is based are that the prosecutor knew the tape was not admissible in evidence, and that the reference to it in the opening statement was prejudicial.
We find this assignment to be without merit for two reasons.
First, the defendant never objected or sought a mistrial based on the allegedly improper reference in the opening statement. When a defendant fails to seek corrective measures timely, he cannot secure appellate relief. LSA-C.Cr.P. art. 841; State v. Sims, 346 So.2d 664 (La.1977).
Second, even if the evidence has been proffered and ruled inadmissible, the mention of it in the opening statement would not be grounds for a mistrial or reversal in the absence of prosecutorial bad faith or a showing of clear and substantial prejudice. In State v. Green, 343 So.2d 149 (La.1977) our Supreme Court said:
"The general rule is that, absent bad faith on the part of the prosecutor or clear and substantial prejudice, the reference in the opening statement to evidence later ruled inadmissible is not a ground for a mistrial. The rule takes into account that proof frequently falls short of professional expectations."
Defendant has not shown, nor does the record indicate, that he suffered any prejudice from the remarks. Nor is there any indication of prosecutorial bad faith. To the contrary, the State was merely meeting its duty to protect the defendant from surprise when it announced the possibility that the tape would be used. The State maintains that it was a strategy decision not to use the tape when it became apparent that it was unnecessary as corroborative evidence.
This assignment is without merit.
ASSIGNMENT OF ERROR NO. 2
An autopsy was done February 5, 1981. Several weeks elapsed before the autopsy report was completed and filed in the Coroner's office. The State never had a copy of the report in its possession. At the trial the State did not attempt to introduce the report into evidence but relied on the testimony of the Deputy Coroner who had done the autopsy to establish the cause of death and identify the bullet removed from the victim's body.
Defendant objected to the testimony of the Deputy Coroner on the grounds he had not been furnished a copy of the autopsy report by the District Attorney in response to a discovery order issued under LSA-C. Cr.P. art. 719. The trial court overruled the objection but gave defendant's counsel an opportunity to study the autopsy report before the testimony of the Deputy Coroner began.
This assignment of error argues, in effect, that the State, once ordered to make discovery, has the duty to come forward with the discoverable evidence and physically supply it to the defendant. We disagree.
LSA-C.Cr.P. art. 719 does not require the State to present an item of evidence to the defendant but instead requires that the State allow defendant access to the covered information. The article reads:
"Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial. Exculpatory evidence shall be produced under this article even though it is not intended for use at trial."
The discovery articles impose no affirmative duty upon the prosecution to assemble all items requested in discovery and present them to the defense. State v. Hennigan, 404 So.2d 222 (La.1981).
Defendant had every right and opportunity to secure a copy of the autopsy report *1216 from the moment it was filed in the Coroner's office. His attorneys admitted that no effort was made to obtain a copy of the report from that source.
Even if we were to find some violation of the discovery order, there would still be no ground for reversal under this assignment for two reasons. The first is, LSA-C.Cr.P. art. 729.5(A) permits a trial judge to choose from a wide range of alternative sanctions. State v. Lee, 364 So.2d 1024 (La.1978); State v. Arnaud, 412 So.2d 1013 (La.1982). Counsel for the defendant thus had several available remedies but asked the court only that the deputy coroner not be allowed to testify. Counsel could have but did not ask for a continuance or a recess. The trial court on its own gave counsel time in court to review the report before the testimony began.
Our second reason for finding no grounds for reversal (assuming a violation of the discovery articles), is that defendant must show that he was prejudiced by the court's ruling denying the motion to strike the doctor's testimony. State v. Arnaud, supra; State v. Norwood, 396 So.2d 1307 (La.1981); State v. James, 396 So.2d 1281 (La.1981). Defendant has not demonstrated that he was prejudiced by the pathologist's testimony rather than submission of the autopsy report into evidence, or by the fact that he did not examine the report before the trial began. As in Arnaud, supra, the defendant here had ample time to obtain evidence before the trial; he had ample opportunity to present any and all exculpatory evidence; and he had the opportunity to fully cross-examine the doctor.
There is a suggestion in defendant's brief that the prosecution, by its failure to physically supply defendant with a copy of the autopsy report, thereby suppressed material, exculpatory evidence in violation of the rule of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Regarding that contention (if we correctly perceive it to be one), we note that the evidence here was not withheld. The evidence was given to defendant at trial in the form of the report and was introduced through the doctor's testimony thus allowing defendant a chance to cross-examine the doctor and question results of the report. Moreover, it does not appear from the record that the autopsy report was favorable evidence for the defendant. The results of the report appear to contradict defendant's testimony and his version of what happened. It does not appear to bolster in the slightest his claim of self-defense.
For these reasons, this assignment lacks merits.
ASSIGNMENT OF ERROR NO. 3
Defendant argues by this assignment that the trial court erred in convicting the defendant, because, after viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt, and no rational trier of fact could have found proof excluding every reasonable hypothesis of innocence.
Defendant is incorrect in arguing that the standard of appellate review of the sufficiency of evidence claim is the exclusion of every reasonable hypothesis of innocence. That standard is applicable only where the evidence against the accused is entirely circumstantial. State v. Moore, 432 So.2d 209 (La.1983). Here there was an eyewitness who saw the defendant shoot the victim. Thus the evidence was not circumstantial and the proper standard of our review is whether, viewing the evidence most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Moore, supra.
In order to convict the defendant in the instant case of second degree murder, the prosecution was required to prove beyond a reasonable doubt the following essential elements:
(1) The defendant killed Pee Wee Williams, and

*1217 (2) The defendant acted with a specific intent to kill or to inflict great bodily harm.
The record is clear as to proof beyond reasonable doubt of the first element of the crime charged. There is no doubt that Frederick Williams did in fact kill Pee Wee Williams.
Defendant asks this Court to reexamine the testimony offered to prove the element of specific intent, particularly the testimony of the eyewitness, Fe'Nita Bryant. It is true that there were many inconsistencies in Ms. Bryant's testimony. It is also true that her testimony was somewhat self-serving. But the jury was made well aware of her background and of the inconsistencies in her testimony. Ms. Bryant was put through rigorous examination and cross-examination through which her character was made quite clear to the jury. In the end, the jury evidently believed that Ms. Bryant was telling the truth about what she saw on February 5th.
Ms. Bryant testified that the defendant wrestled with the victim for a while and then when they separated the defendant fired one shot into the deceased's stomach. She further stated the deceased did not have a weapon.
Defendant argues that the deputy coroner's testimony does not corroborate Ms. Bryant's testimony. In particular, he argues that the deputy coroner's testimony as to angle of entry and path of the bullet contradicts Ms. Bryant's version of how the shooting occurred. But we see in the record nothing contradictory between these testimonies. The deputy coroner did not testify that the angle of entry/path of the bullet was such that the victim could not have been shot as Ms. Bryant testified.
Defendant claims that the coroner's testimony corroborates defendant's version of the shooting. This is inconsistent with the testimony of the deputy coroner. Defendant claims he fought with Pee Wee and kicked him in the throat knocking him against the wall. The coroner testified that there were no signs of such trauma on the victim.
For this Court to disturb the factual determinations of the jury below those determinations must be clearly contrary to the evidence. State v. Klar, 400 So.2d 610 (La.1981). It cannot be said in this case that the jury's determinations were clearly contrary to the evidence. The case comes down to a question of who the jury believed. They believed Fe'Nita and the corroborating testimony of the State's other witnesses over the testimony of defendant in his own behalf.
This assignment lacks merit.
ASSIGNMENT OF ERROR NO. 4
The defendant claimed self-defense, and by this assignment urges that the State failed to prove beyond a reasonable doubt that the homicide was not done in self-defense.
The defendant who raises the issue of self-defense does not assume any burden of proof whatsoever; the State has the entire and affirmative burden of proving beyond a reasonable doubt that the homicide was not perpetrated in self-defense. State v. Savoy, 418 So.2d 547 (La.1982).
Under LSA-R.S. 14:20 a homicide is justifiable:
"(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger ..."
Defendant claims that he killed Pee Wee Williams in self-defense because Pee Wee had a gun in one hand and "a little small pocket knife" in the other, when the alleged scuffle and subsequent shooting ensued.
The State showed that neither the alleged gun nor a knife were ever found. The eyewitness testified the victim had no weapons.
This assignment of error is flawed for another reason. The testimony establishes that defendant first procured a gun before going to confront Pee Wee about the gun he suspected Pee Wee had stolen from *1218 him. He went in search of Pee Wee, gun in hand, to retrieve his property. He confronted the victim, gun in hand, and demanded the return of his "stolen" property. It is the law in this State that one who is the aggressor or who brings on a difficulty, cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw or discontinue the conflict. LSA-R.S. 14:21.
The jury was instructed as to the "aggressor doctrine" exception to the claim of self-defense. It may well be from the testimony given that the jury concluded defendant could not avail himself of the defense of self-defense as he initiated the confrontation and certainly did not make any attempt to withdraw.
Applying the standard enunciated in Jackson v. Virginia, supra, we find that sufficient evidence was adduced at trial by the State to establish that the homicide was not perpetrated in self-defense.
For the foregoing reasons, the conviction is affirmed.
AFFIRMED.
DOMENGEAUX, J., concurs and assigns brief reasons.
DOMENGEAUX, Judge, concurring.
I agree completely with the majority opinion, but in keeping with my position on the review of facts doctrine I reiterate the views stated in my previous concurring opinion in State v. Gatson, 434 So.2d 1315 (La.App. 3rd Cir.1983). I feel that the continued application of the review of facts rationale set out in Jackson v. Virginia, supra, and State v. Mathews, 375 So.2d 1165 (La.1979), results in our appellate courts becoming nothing more than second guessers of the triers of fact.