495 So.2d 411 (1986)
STATE of Louisiana, Plaintiff-Appellee,
v.
Johnny MYERS, Defendant-Appellant.
No. CR86-263.
Court of Appeal of Louisiana, Third Circuit.
October 8, 1986.
*412 G. Paul Marx, Lafayette, for defendant-appellant.
Charles Brandt, Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before DOUCET, LABORDE and KNOLL, JJ.
KNOLL, Judge.
Defendant, Johnny Myers, was indicted for second-degree murder of William Griffin, a/k/a "Doc". The jury returned a verdict of manslaughter, a violation of LSA-R.S. 14:31, which is a responsive verdict to second-degree murder. The sentencing court imposed a twenty-one year sentence at hard labor. Defendant appeals, contending the trial court erred: (1) in allowing the State to introduce defendant's oral inculpatory statements into evidence; and (2) in imposing an excessive sentence. We affirm.

*413 FACTS
In Lafayette, on the night of February 23, 1985, defendant approached Frank Fonseca, a "pimp", to secure drugs. Fonseca told defendant that he could put him in touch with someone who could supply him with drugs. Defendant told Fonseca he did not have any money. Fonseca took him to "Doc" who sold drugs in exchange for homosexual favors.
They went to "Doc's" house where "Doc" gave defendant and Fonseca methamphetamine ("crystal") which "Doc" placed on their tongues. Defendant continued taking "crystal" for a short time and then he and "Doc" went to one of the bedrooms in "Doc's" house. Approximately twenty minutes later Fonseca went to the bedroom where he observed defendant with his arm in a sleep hold position around "Doc's" neck. Fonseca saw "Doc" turn blue in defendant's arms, and observed blood ooze from "Doc's" mouth. Defendant and "Doc" fell to the floor of the bedroom where defendant continued his choke hold until the victim stopped moving, whereupon defendant covered "Doc's" body with a bedspread. "Doc" was five feet ten inches tall and weighed 165 pounds; defendant was six feet two inches tall and weighed 212 pounds. Fonseca and defendant ransacked "Doc's" house. They stole his jacket, clothes and "Doc's" car, and fled to Natchez, Mississippi where Fonseca's grandparents lived; there Fonseca turned himself into the Natchez police. Defendant fled and was eventually arrested in Memphis, Tennessee. He was extradited to Louisiana to stand trial for the second-degree murder of "Doc".

ASSIGNMENT OF ERROR ONE
Defendant contends that the trial court erred in failing to suppress an oral confession made by him to Lafayette detectives on the extradition flight from Memphis to New Orleans. He urges that the inculpatory statements were made after he asserted his right to remain silent until he consulted with an attorney.
On October 25, 1985, defendant filed a motion seeking to discover any statements, oral or written, made by him which were relevant to the charges pending against him. On November 7, 1985, the State answered the motion for discovery affirmatively, and set forth in its answer defendant's oral confession. On the date of trial, December 10, 1985, the State further advised defendant in a written motion of its intention to introduce defendant's confession, pursuant to LSA-C.Cr.P. Art. 768 which notice again set forth defendant's oral confession, as follows:
"On or about May 10, 1985, on return flight from Memphis, Johnny Myers told Det. Jim Craft and Det. Ken Talbot that he and Griffin ["Doc"] had taken some speed together and that it messed him up. Myers allowed Griffin ["Doc"] to have oral sex on him in the living room. The `action' then moved to the bedroom. Myers stated he could not remember whether or not he was having sexual intercourse with Griffin ["Doc"] at the time of death. Myers stated he choked Griffin ["Doc"] until he wasn't moving anymore. The death was not intentional and he was on drugs at the time. He stated the drugs Griffin ["Doc"] gave him must have caused him to go crazy. After that he panicked and left the scene with Fonseca in Griffin's ["Doc's"] car. He would plead to manslaughter."
For a confession to be admitted into evidence, it must be shown that it was free and voluntary and not made under the influence of fear, duress, intimidation, menances, threats, inducements, or promises. LSA-R.S. 15:451. The State has the burden of proving the confession was free and voluntary. LSA-C.Cr.P. Art. 703(D); State v. Thibodeaux, 414 So.2d 366 (La. 1982). When a defendant moves to suppress a confession during the trial on the merits, the State must prove beyond a reasonable doubt that it was voluntarily made. State v. Rodrigue, 409 So.2d 556 (La.1982). The conclusions of a trial court on the credibility and weight of testimony relating to the voluntariness of a confession are *414 given great weight and will not be disturbed when supported by the evidence. State v. Vaccaro, 411 So.2d 415 (La.1982).
LSA-C.Cr.P. Art. 703(F) states in pertinent part that the "[f]ailure to file a motion to suppress evidence in accordance with this Article [i.e., prior to trial] prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress." The record in the case sub judice is void of a motion to suppress defendant's oral statement prior to trial as required by C.Cr.P. Art. 703(F). At trial he objected to its introduction on the grounds it was not freely and voluntarily made. While we find defendant is precluded under Article 703(F) from attempting to suppress defendant's confession at trial, we note that the record shows overwhelming evidence that defendant made the oral confession knowingly, freely and voluntarily. The Lafayette detectives testified that they read defendant his Miranda rights prior to boarding the airplane in Memphis. The detectives said that during the flight defendant, without being interrogated, voluntarily made inculpatory statements despite their warnings to him that any statements he made could be used against him in court. Defendant admitted that the detectives advised him of his Miranda rights prior to boarding the airplane, and that in flight he made the statements to them.
Although defendant's version is contradictory to that of the detectives, after our careful review of the record, we find that the State proved beyond a reasonable doubt that defendant's oral confession was knowingly, freely and voluntarily given.

EXCESSIVENESS OF SENTENCE
Defendant contends that the imposition of twenty-one years at hard labor is excessive.
Article I, Section 20 of the Louisiana Constitution prohibits the imposition by law of excessive punishment. For a sentence to be excessive, the penalty must be so disproportionate to the crime committed, in light of the harm caused to society, as to shock our sense of justice. State v. Campbell, 404 So.2d 1205 (La.1981); State v. Bonanno, 384 So.2d 355 (La.1980). The sentencing court is given wide discretion in the imposition of sentences within statutory limits, and the sentence should not be set aside as excessive in the absence of a manifest abuse of the sentencing court's discretion. State v. Abercrumbia, 412 So.2d 1027 (La.1982).
The maximum sentence for manslaughter is twenty-one years. Defendant's sentence falls within the statutory limits. Nonetheless, it is judicially recognized that a sentence, although within the statutory limits, may violate defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). The sentencing court's reasons for imposition of sentence are an important aid when we review a sentence for excessiveness. State v. Bourgeois, 406 So.2d 550 (La.1981).
LSA-C.Cr.P. Art. 894.1 provides criteria for consideration in determining whether a sentence is excessive. State v. Sepulvado, supra. Even though the sentencing court need not articulate every aggravating and mitigating circumstance contained in Article 894.1, the record must reflect that adequate consideration was given to these codal guidelines in particularizing the defendant's sentence. State v. Smith, 433 So.2d 688 (La.1983).
Defendant urges that the sentencing court erred in imposing the maximum sentence because it felt defendant was guilty of murder even though the jury returned a manslaughter verdict. We disagree.
The sentencing court is charged with viewing every circumstance surrounding the offense committed, and should impose a sentence fitting defendant's conduct. See: State v. Lanclos, 419 So.2d 475 (La.1982). Even though in the case sub judice defendant was found guilty of manslaughter, it was not improper for the sentencing court to consider defendant's actual conduct. State v. Hayes, 466 So.2d 767 (La.App. 4th Cir.1985), writ denied, 469 So.2d 982 (La.1985); State v. Williams, 430 So.2d 114 (La.App. 3rd Cir.1983), writ denied, 435 So.2d 449 (La.1983).
*415 After carefully considering the record, we find the trial court articulated a well reasoned determination for the imposition of the sentence. Moreover, we further find that the record overwhelmingly supports the sentencing choice. Defendant's crime was violent and unjustified. Defendant, who admitted being on drugs since he was twelve years of age, committed the present offense in the course of obtaining drugs; accordingly, the sentencing court found that it was likely defendant would commit the crime again. Furthermore, the record establishes that defendant had two prior burglary convictions, one of a pharmacy and one of an inhabited dwelling, and, that he escaped from prison while serving one of his sentences in Mississippi. In view of the wide discretion granted a sentencing court in imposing its sentencing choice within the statutory limits, we find that defendant's sentence is not so disproportionate as to shock our sense of justice, and does not constitute an abuse of the sentencing court's discretion. Therefore, we conclude that defendant's sentence is not constitutionally excessive.

DECREE
For the foregoing reasons, the conviction and sentence of defendant, Johnny Myers, is affirmed.
AFFIRMED.