598 So.2d 481 (1992)
STATE of Louisiana, Appellee,
v.
John David COOK, Appellant.
No. 23507-KA.
Court of Appeal of Louisiana, Second Circuit.
April 8, 1992.
Rehearing Denied May 7, 1992.
*482 Robert C. White, Mark O. Foster, Minden, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, James M. Bullers, Dist. Atty., Charles E. McConnell, L. Charles Minifield, Asst. Dist. Attys., Minden, for appellee.
Before SEXTON, LINDSAY and STEWART, JJ.
LINDSAY, Judge.
The defendant, John David Cook, was originally arrested on charges of first degree murder, attempted first degree murder, armed robbery, and attempted aggravated arson. Pursuant to a plea agreement, the defendant subsequently pled guilty to one count of manslaughter. All other charges were dismissed. The trial court imposed a sentence of 21 years at hard labor, the maximum penalty for manslaughter. The defendant appealed his sentence. For the reasons assigned below, we affirm.

FACTS
On February 27, 1991, the defendant and the victim, Ricky Jones, agreed to meet and conduct a drug transaction at an isolated oil well site in a heavily wooded area in Webster Parish. After scheduling the meeting, the defendant arranged for a friend, Claude Yount, III, to accompany him. At the appointed time, the defendant and Mr. Yount went to the oil field site. A short time later, the victim and his girlfriend, Virginia Honeycutt, arrived in the victim's pick-up truck. The defendant walked from his Blazer vehicle to the pick-up truck. After a brief conversation with the defendant, the victim produced a large bag containing marijuana. The defendant and the victim then walked over to the defendant's Blazer where they became involved in an altercation. During the course of this altercation, the defendant stabbed the victim.
The victim yelled to Ms. Honeycutt, who was sitting in the front passenger seat of the truck, that "it was a set-up." He also yelled for her to get his gun, which was in a bag between the bucket seats of the truck. Mr. Yount, who had been hiding, ran over to the truck where Ms. Honeycutt was sitting. A struggle took place, and Ms. Honeycutt was stabbed. Apparently, Mr. Yount also fought with the victim and was stabbed. However, the injured victim was able to get behind the wheel of his truck and drive a short distance before losing consciousness. The truck ran off the road and hit a tree.
Ms. Honeycutt grabbed the gun from between the seats and fled into the woods. She heard the defendant and Mr. Yount stop their vehicle and say that they had to *483 track her down. The woman escaped by hiding in the woods for several hours.
The defendant and Mr. Yount found the victim's body hanging partially out of the open passenger door of his truck. Upon ascertaining that he was dead, they shoved his body back in the truck and shut the door. Before leaving the area, the defendant attempted to burn the truck by putting a rag in the gas tank and setting it on fire. However, the fuse failed to ignite the gasoline.
Nearby residents heard strange noises in the area and notified the sheriff's department. Deputies responding to the call discovered the truck and the victim's body. On the floorboard they found the victim's large folding pocketknife. The knife was open and was stained with blood. Eventually, Ms. Honeycutt emerged from the wooded area. She was able to provide the deputies with information from which they were able to determine the defendant's identity.
After leaving the scene, the defendant and Mr. Yount disposed of the bloody seat covers from the Blazer. (Although the defendant was unharmed, Mr. Yount had received several cuts.) The defendant then drove Mr. Yount to his home. Mr. Yount agreed to keep the sack of marijuana.
Early the next morning, the defendant was arrested for first degree murder, attempted first degree murder, armed robbery, and attempted aggravated arson. While executing a search warrant at the defendant's home, the officers discovered an empty box for a "Rambo III" knife.
Mr. Yount was also arrested. He voluntarily surrendered the sack of marijuana. In addition to the marijuana, the sack also contained an empty scabbard for a "Rambo III" knife of the same type depicted on the box found at the defendant's home. However, the knife was never recovered.
On April 16, 1991, a bill of information was filed charging the defendant with manslaughter. That same day he pled guilty to this charge. During the plea proceedings, the defendant acknowledged, with minor modifications, the truth of the facts recited by the district attorney as the factual basis of the plea. On June 14,1991, a sentencing hearing was held at which the defendant, his wife, and his employer testified. The defense also submitted for the court's consideration the testimony given by Ms. Honeycutt at the preliminary examination. The state offered the record of a previous bond reduction hearing and asked the court to consider the facts set forth at the guilty plea. Thereafter, the trial court imposed a sentence of 21 years at hard labor, the maximum term of imprisonment for manslaughter.
The defendant appealed his sentence. He contends that the trial court erred in the following respects: (1) in considering information contained in the report on the victim's autopsy; (2) in considering the defendant's alleged criminal history; and (3) in imposing an excessive sentence.

AUTOPSY REPORT
The defendant contends that the trial court's consideration of information in the autopsy report was improper because this document was not admitted into evidence at the sentencing hearing or otherwise filed in the record. He also claims that he was not given an opportunity to rebut the information contained in the report which was relied upon by the trial court in imposing sentence.
In the summary of facts presented at the guilty plea, the state recited that the unrecovered hunting knife (the scabbard of which was found in the marijuana sack and the box for which was found at the defendant's home) had a much longer blade than the victim's knife which was recovered from his truck. The assistant district attorney further stated that the missing knife was consistent with the autopsy report which stated that the victim's wounds were more than five inches deep.
At the sentencing hearing, the trial court noted that some of the victim's wounds could not have been inflicted by the recovered knife. Thus, the court interpreted the autopsy report as indicating that more than one knife was involved in stabbing the victim.
*484 The defendant concedes that he was provided with a copy of the autopsy report. Instead he complains that the trial court was not supplied with a copy of the report. The defendant also argues that he was not given an opportunity to rebut the autopsy information which was adverse to his interests.
However, it is clear from the trial judge's statements at the sentencing hearing that he had access to the autopsy report, which is a public record. State v. Williams, 438 So.2d 1212 (La.App. 3d Cir.1983), writ denied, 443 So.2d 590 (La.1983); State v. Arnold, 466 So.2d 520 (La.App. 3d Cir.1985), writ denied, 470 So.2d 124 (La.1985). Furthermore, it is equally plain that when the defendant entered his guilty plea, the assistant district attorney's references to this document put the defendant on notice that the report suggested the presence of a second knife. (This was consistent with police testimony at the preliminary examination that the use of another knife was suspected.) The defendant had ample opportunity to present rebuttal testimony at the sentencing hearing, which was held at his request. Not only did the defendant fail to rebut this evidence at the sentencing hearing, but he also failed to contradict the state's recitation of this information when he entered his guilty plea.
Although the autopsy report was apparently not admitted into the record, sources of information from which a sentencing court may draw in determining the appropriate sentence are extensive, and the traditional rules of evidence are not bars to consideration of otherwise relevant information. State v. Higginbotham, 541 So.2d 348 (La.App. 2d Cir.1989); State v. Jones, 587 So.2d 787 (La.App. 3d Cir.1991), writ denied, 590 So.2d 78 (La.1991). The autopsy report and the conclusions to be drawn from its contents were relevant to the issue of the defendant's status as the aggressor.
The defendant was supplied with a copy of the autopsy report and given adequate notice of the state's reliance upon it. He also had ample opportunity to refute its contents. Thus, he cannot claim that he was prejudiced by the trial court's consideration of the document. Also, since the autopsy report is a public record, the trial court had as much right to examine it as any other person. We find no error in the trial court's reliance upon the autopsy report.
This assignment of error is without merit.

DEFENDANT'S CRIMINAL HISTORY
The defendant also contends that the trial court erred in considering his "alleged" criminal history. However, in his brief, the defendant's sole reference to this assignment is his statement that he was a second felony offender who had successfully completed a five-year probation period for burglary of an inhabited dwelling. The defendant fails to specify any error in the criminal history recited by the trial court.
The pre-sentence investigation (PSI) report demonstrates that the defendant had an extensive prior criminal history. It states that the defendant had a "significant" juvenile record which included a commitment to a juvenile institution. In 1983, he was charged with auto theft, armed robbery, aggravated assault and conspiracy in Las Cruces, New Mexico. He was later convicted of the armed robbery charge. In April, 1985, he was charged with felony theft and burglary in Minden, Louisiana. However, at that time he waived extradition to Texas. (The record shows no further disposition of the Minden charges.) In October, 1985, he was convicted of burglary of an inhabited dwelling in Dallas, Texas. He was sentenced to serve five years, but he was paroled in June, 1986. His parole expired in April, 1990.
The defendant has not refuted any of the criminal history relied upon the trial court in imposing sentence. In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Palmer, 448 So.2d 765 (La.App. 2d Cir.1984), writ denied, 452 So.2d 695 (La.1984); State v. Jones, supra.
*485 Consequently, we find no merit in this assignment of error.

EXCESSIVE SENTENCE
The defendant also contends that the trial court erred in imposing an excessive sentence. In particular, he argues that he should not have received the maximum sentence for manslaughter.
In determining whether a sentence is excessive, the test imposed by the reviewing court is two-pronged. First, the record must show that the trial court took cognizance of the factors set forth in LSA-C.Cr.P. Art. 894.1 which enumerates criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied, 439 So.2d 1074 (La. 1983); State v. Tully, 430 So.2d 124 (La. App. 2d Cir. 1983), writ denied, 435 So.2d 438 (La.1983). After determining whether the provisions of LSA-C.Cr.P. Art. 894.1 have been complied with by the trial court, the reviewing court must then determine whether the sentence imposed is too severe given the circumstances of the case and the background of the defendant.
The sentencing court is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing court. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983).
As a general rule, maximum or near maximum sentences are to be reserved for the worst offenders and the worst offenses. State v. Lathers, 444 So.2d 96 (La.1983); State v. Telsee, 425 So.2d 1251 (La.1983); State v. Williams, 454 So.2d 1287 (La.App. 2d Cir.1984). The sentencing court is charged with viewing every circumstance surrounding the offense committed and should impose a sentence fitting the defendant's conduct. State v. Myers, 495 So.2d 411 (La.App. 3d Cir.1986).
At the sentencing hearing, the defendant contradicted several facts which he had previously acknowledged at the guilty plea. Specifically, he embellished the facts to cast himself as a hapless victim who was forced to kill a crazed drug dealer, who was allegedly trying to coerce him into selling drugs, in order to save his own life. He also testified that he took Mr. Yount to the meeting as a "peacemaker."
Before imposing sentence, the trial court observed that the defendant had not entered an Alford plea by which he accepted the benefits of pleading guilty while still maintaining his innocence. Consequently, the trial court was forced to conclude that either the defendant had perjured himself at the plea bargain or at the sentencing hearing.
The trial court further concluded it was likely that the defendant and Mr. Yount had gone to the meeting with the intent of "ripping off" and/or killing Mr. Jones. The factors noted by the trial court included the concealed presence of Mr. Yount at the meeting site, the attempt to set fire to the truck containing the victim's body, and the indications of a second, missing knife which apparently belonged to the defendant. The trial court was unimpressed with the defendant's veracity and chose to disregard his selfserving account of the stabbing.
In support of the trial court's evaluation of the defendant's credibility, the following information appears in the PSI report. Shortly after his arrest, the defendant told the police that he had gone to meet Mr. Jones to secure marijuana for his own personal use. He also said that after he took the knife from the victim he "freaked out" and began slashing at and stabbing Mr. Jones. However, when interviewed by the probation officer who compiled the PSI report, the defendant stated that they met to discuss a $2,000 debt owed by the defendant and that Mr. Jones wanted him to sell drugs to work off the debt. The defendant initially claimed that he was merely holding the knife in his hand and that the victim impaled himself on it twice by charging at him.
*486 Additionally, the witness who reported hearing strange noises in the area of the oil well also saw a vehicle matching that of the defendant driving up and down the road very slowly with its headlights off. This contradicts the defendant's denial that he and Yount had returned to the area of the victim's truck more than once and that they had hunted for Ms. Honeycutt.
Another factor considered by the trial court in imposing the maximum sentence was the 25-year-old defendant's past criminal activities, which were previously discussed. The court determined that the defendant was likely to commit another crime and that he required a period of incarceration. The trial court also noted that the defendant received considerable benefit from the fact that he was only charged with manslaughter, not murder, and that he was not charged with the attempted arson. In mitigation, the trial court considered the favorable testimony of the defendant's employer.
Under the circumstances of this case, we find no manifest abuse of the trial court's sentencing discretion. In view of the severity of the offense, the defendant's criminal history, and the totality of the circumstances, the trial court did not err in imposing the maximum sentence for manslaughter.
Consequently, this assignment of error is without merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, LINDSAY, HIGHTOWER and STEWART, JJ.
Rehearing denied.