645 So.2d 804 (1994)
STATE of Louisiana
v.
Donald STELLY.
No. CR94-306.
Court of Appeal of Louisiana, Third Circuit.
November 2, 1994.
Rehearing Denied December 13, 1994.
*805 J. William Pucheu, Ville Platte, for State.
Edward J. Lopez, Opelousas, for Donald Stelly.
Donald Stelly, pro se.
Before DOUCET, PETERS and BERTRAND[*], JJ.
LUCIEN C. BERTRAND, Judge.
After a jury trial, defendant, Donald Stelly, was convicted of second degree kidnapping and aggravated rape, violations of La. R.S. 14:44.1 and 14:42, respectively. Defendant was sentenced to 40 years at hard labor for the kidnapping conviction and life imprisonment for the aggravated rape conviction. He appeals, raising the following assignments of error:
1. The District Court erred in its failure to grant defendant's motion to quash based on the expiration of time for commencement of trial.
2. The District Court erred in ordering the defendant to submit to blood sampling without probable cause.
3. The District Court erred in not requiring the office of the District Attorney to furnish the defendant complete answers to motions for discovery as was required by the Third Circuit Court of Appeal in the alternative (either sample or answers to discovery motions).
4. The District Court erred in not granting a trial continuance to allow defendant sufficient time for defense experts to evaluate the limited discovery material provided by the State to prepare for the admissibility hearing.
5. The District Court erred in allowing a DNA expert to testify as to her findings and conclusions which were based on genetic materials prepared for examination by a lab in California without requiring the State to lay a proper foundation as to the validity and scientifically proper preparation of the materials.
6. The District Court erred in allowing the admission into evidence of the testimony of DNA experts without a proper foundation as to admissibility being laid.
For the reasons which follow, we affirm.

*806 FACTS
On the evening of Sunday, February 4, 1990, 15-year-old Phoebe Henry stopped at B & S Grocery on U.S. Highway 167 in Evangeline Parish. She entered the store, bought a soft drink, and returned to her car. Defendant, wearing camouflage clothing and a ski mask, jumped into the back seat of her car and forced Ms. Henry at gunpoint to drive to an open field. There, he forced her to disrobe and perform oral sex on him; then he raped her. The period of intercourse lasted 10-15 minutes.
Defendant then drove the victim's car to an area near B & S Grocery where he exited the car. It was approximately 8:30 p.m. Ms. Henry drove home, which was near the grocery store, and told her parents what had happened. The Evangeline Parish Sheriff's Department was notified, and Ms. Henry was taken to Humana Hospital, where a rape kit examination was performed.
Samples obtained from use of the rape kit were taken to the Acadiana Crime Lab for preliminary testing, then sent to a private company in California, the Serological Research Institute, and from there to another private laboratory, Cellmark Diagnostics in Maryland, for more advanced DNA analysis.
In the meantime, the police investigation of the crime resulted in the defendant's arrest on May 18, 1990. On March 25, 1991, the prosecution of the defendant was instituted by grand jury indictment, charging the defendant with one count of second degree kidnapping, one count of aggravated rape, and one count of aggravated oral sexual battery, the latter of which was severed. On April 19, 1991, the defendant was arraigned and his counsel thereafter filed certain discovery and pre-trial motions. The trial court ordered that the defendant's discovery motions be answered by July 5, 1991, and further ordered that the DNA test results and supporting forensic experimentation be submitted to an independent laboratory to be chosen by the defense for genetic testing and evaluation. Also, the forensic evidence evaluated by the State was to be made available to defense experts for independent genetic testing. The original trial date of July 15, 1991 was postponed.
On July 12, 1991, the State moved to reset the case for trial. At this point, the State had not supplied the defense with forensic evidence or supporting documentation as called for in the earlier court order. The defense then filed a second discovery motion which was denied on September 27, 1991, and the trial judge vacated his previous discovery order. Defendant applied for writs and this court issued an order for an evidentiary hearing in the trial court on remand. The discovery disputes were resolved at a hearing on July 30, 1993, and the trial took place October 12-15, 1993.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant alleges the trial court erred in denying his motion to quash the indictment based upon the expiration of the time limit for bringing a felony defendant to trial. The limit for bringing a non capital felony defendant to trial is set forth in La.C.Cr.P. Art. 578(2) as two years from the date of institution of the prosecution. Suspension of this time limitation is provided for in La.C.Cr.P. Art. 580:
When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial.
In the case of State v. Rome, 93-1221 (La. 1/14/94), 630 So.2d 1284, the Louisiana Supreme Court stated that when a defendant brings a motion to quash based on prescription, the State bears a heavy burden to demonstrate either an interruption or suspension of the time limit so that prescription will not have run. In the present case, more than two years elapsed between the institution of the prosecution by indictment on March 25, 1991, and the trial which began on October 12, 1993. The defendant filed a motion to quash the indictment prior to trial which was heard and denied on October 8, 1993.
The State contends and the trial judge held that the two year prescriptive period was suspended in this case pending a hearing *807 on discovery ordered by the appellate court pursuant to defendant's writ application. On January 9, 1992, we issued the following order:
This application is remanded to the trial court for the holding of an evidentiary hearing to determine if relator has been provided with the evidence so that he may complete his own independent genetic testing. If relator has been provided with this evidence then the state does not have to answer relator's motion for discovery. State v. Martinez, 432 So.2d 1201 (La.App. 4 Cir.1983), writ denied, 435 So.2d 439 (La.1983). If the state has not provided the relator with this evidence, the state must answer relator's motion for discovery in accordance with La.C.Cr.P. Art. 719. See, State v. Burgess, 482 So.2d 651 (La. App. 4 Cir.1985).
Accordingly, the case is remanded to the trial court for further proceedings consistent with the views expressed herein.
Subsequent to the issuance of this order the State moved to have the trial date reset several times, and the evidentiary hearing ordered by this court did not take place until July 30, 1993. Defendant argues that because no stay was ever requested or issued by the appellate court pending its remand for the discovery hearing, the prescriptive period provided for in Article 580 continued to run. In denying defendant's motion to quash, the trial court held that defendant's pre-trial motion for discovery was unresolved until the evidentiary hearing and ruling on July 30, 1993. Therefore, the prescriptive period was suspended up to that time.
We find no error in the determination made by the trial judge. The facts presented herein fit within the statutory language of La.C.Cr.P. Art. 580, as the trial court did not rule on defendant's remanded discovery motion until July of 1993. The motion, initially granted then vacated, was still pending for purposes of Article 580 from the time this court ordered an evidentiary hearing on the matter in January of 1992.
While it is true that the Rome case, and the recent case of State v. Joseph, 93-2734 (La. 6/3/94), 637 So.2d 1032, place a high burden on the State to demonstrate that the time limit for bringing a defendant to trial has been suspended or interrupted, it is clear that in this case, the State met its burden of proof. We find the facts of the present case distinguishable from Rome and Joseph in that those cases involved delays which resulted from the procedures employed by the State, whereas the delays in this case resulted from a pending discovery motion, exactly the type of delay governed by Article 580. For this reason, we affirm the trial court's denial of defendant's motion to quash the indictment.

ASSIGNMENT OF ERROR NO. 2
Defendant next contends the trial court erred in ordering him to submit to blood sampling without probable cause. The record shows the following facts were adduced at the evidentiary hearing held pursuant to the State's motion to obtain blood samples and other evidence from the defendant:
1. On February 4, 1990, Phoebe Henry, 15 years old, was abducted from a grocery store parking lot in Evangeline Parish and taken to a rural area where she was raped by a white male wearing camouflage clothing and a ski mask. At a date and time coinciding with the rape, an employee of the grocery store observed a gold colored car that was similar in color and shape to the car owned by the defendant at that time.
2. Witnesses, including a police officer, testified that on February 18, 1990, the defendant was seen in camouflage clothing driving his green Ford truck near the scene of another abduction/rape in nearby Opelousas at about the time that incident took place. The State's motion for production of physical evidence states that the incident involved a 16-year-old girl who was also abducted from a store parking lot and raped in a rural area by a white male wearing camouflage clothing and a ski mask.
3. Wayne Duplechin, a co-worker of the defendant's, testified that the defendant owned a ski mask.
Probable cause is a practical, common sense concept turning on an assessment *808 of probabilities in a particular fact situation. Probable cause to search for evidence exists when a reasonable fact finder has cause to believe, given the totality of the circumstances, that a fair probability exists that evidence will be found in the place to be searched. State v. Brady, 585 So.2d 524 (La.1991).
From the facts evidenced in the record, it is clear that two very similar crimes occurred in the same month in the same general area, both committed by a white male in camouflage clothing and a ski mask. The defendant was linked to each of these crimes through the sighting of his vehicles by eye witnesses. Further, the defendant was seen in his truck wearing camouflage clothing near the site of one of the abductions.
Given these facts, the trial judge reasonably found probable cause for the defendant to submit to blood sampling. Therefore, this assignment of error has no merit.

ASSIGNMENT OF ERROR NO. 3
By this assignment of error, the defendant contends the trial court erred in not requiring the State to furnish the defendant with complete answers to his motions for discovery, as required by the appellate court in its January 9, 1992 order. The order required the State to either (1) provide the defendant with the forensic evidence to test for himself, or (2) answer the defendant's motion for discovery to complete independent evaluation and testing.
Apparently selecting the second option, the State forwarded the defendant's discovery questions to the Maryland genetics lab, Cellmark Diagnostics. Cellmark responded, but indicated in some of its answers that the requested materials would be provided for a fee. These materials were various scientific texts which Cellmark relies upon in some its operations. As neither the State nor the defendant ever paid for these materials, they were never provided.
In this appeal, the defendant contends that this court's January 1992 order stated that the State must provide answers to the defendant, and thus the State should have paid for the Cellmark material.
Neither the language in this court's order nor the applicable law, La.C.Cr.P. Arts. 718 and 719, impose upon the State any duty to pay for the Cellmark materials. Analogous jurisprudence also indicates the State does not have a duty to pay for the documents sought by the defendant. In both State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.), writ denied, 449 So.2d 1356 (La.1984) and State v. Williams, 438 So.2d 1212 (La.App. 3rd Cir.), writ denied, 443 So.2d 590 (La. 1983), this circuit held that the State's duty under the discovery articles is to provide the defendant access to information but not necessarily to assemble or provide the actual items.
Additionally, defendant takes issue with the State's nonresponsive answer to one of the interrogatories propounded to Cellmark. The question dealt with racial databases, an issue addressed at both the DNA admissibility hearing and at trial. Both of the State's DNA experts were questioned at length on the use of databases to determine probabilities of a DNA match. It is not clear how information on other racial databases would have aided the Caucasian defendant. Additionally, at least some of the information requested by defendant was available under Interrogatory Number 8, for a fee. Finally, defendant has shown no prejudice by Cellmark's nonresponsive reply to this interrogatory. See State v. Bland, 558 So.2d 719 (La.App. 3rd Cir.), writ denied, 565 So.2d 440 (La.1990).
For these reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant next contends the trial court erred in not granting a continuance to allow him sufficient time before the hearing concerning the admissibility of the DNA evidence for defense experts to evaluate the discovery material provided by the State.
La.C.Cr.P. Art. 712 allows the trial court great discretion in ruling on a motion for continuance, and the ruling will not be reversed absent a showing of abuse of discretion and resulting prejudice to the defendant. See State v. Knighton, 436 So.2d 1141 (La. *809 1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). This circuit has held that where a motion for continuance is based upon insufficiency of time for preparation, the requirement that the defendant show specific prejudice in order to obtain a reversal of his conviction is disregarded only when the preparation time is so minimal as to cast doubt on the fairness of the proceedings. State v. Savage, 575 So.2d 478 (La. App. 3rd Cir.), writ denied, 586 So.2d 556 (La.1991).
In the instant case, defense counsel had 2½ months between the evidentiary hearing on discovery and the trial to obtain expert evaluations of the forensic evidence available to him. We have already determined that the State adequately complied with discovery requests. We now conclude that the defense had sufficient time to prepare with the evidence available and was not prejudiced by the trial court's failure to grant a continuance.

ASSIGNMENTS OF ERROR NOS. 5 AND 6
By these assignments of error, defendant challenges the admissibility of the DNA evidence. Specifically, he contends that the preparatory work performed on the evidentiary samples by the California lab was not verified as having been done properly by testimony from the scientist who performed the work. Therefore, defendant argues there was no foundation for the testimony of the witness from the Maryland lab, whose findings and conclusions necessarily rested on the propriety of the work performed in California.
The evidentiary provisions pertinent to this issue are:
La.R.S. 15:441.1:
Evidence of deoxyribonucleic acid profiles, genetic markers of the blood, and secretor status of the saliva offered to establish the identity of the offender of any crime is relevant as proof in conformity with the Louisiana Code of Evidence.
La.C.E. Art. 703:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
La.C.E. Art. 705(B):
In a criminal case, every expert witness must state the facts upon which his opinion is based, provided, however, that with respect to evidence which would otherwise be inadmissible such basis shall only be elicited on cross-examination.
In State v. Brossette, 93-1036 (La.App. 3rd Cir. 3/2/94), 634 So.2d 1309, this court stated:
An expert witness may testify based on information obtained from others and the method of testing affects only the weight to be afforded the expert's conclusion. State v. Trahan, 543 So.2d 984, 994 (La. App. 3rd Cir.1989), affirmed, 576 So.2d 1 (La.1990), citing State v. Austin, 282 So.2d 711 (La.1973), and State v. Fallon, 290 So.2d 273 (La.1974). The expert witness testifying in court need not be the person who actually drew the blood, performed the tests or compiled the statistics for comparison. He may rely on data prepared by other technicians. State in the Interest of Braden v. Nash, 550 So.2d 866 (La.App. 2d Cir.1989). The trial court did not err in allowing Dr. Giles to testify on the DNA test results basing his expert opinion on data prepared by others.
634 So.2d at p. 1316.
Similar to the Brossette case and the instant case is State v. Wright, 593 So.2d 759 (La.App. 5th Cir.), writ denied, 599 So.2d 313 (La.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 340, 121 L.Ed.2d 257 (1992), wherein the defendant argued that an expert testifying for the State had no personal knowledge of the DNA testing that took place but was relying on testing actually done by another person. However, the expert was directly involved in the testing and it was done with his close supervision. The evidence was ruled admissible.
The defendant herein complains that State witnesses Gary Harmor of the Serological *810 Research Institute in California and Dr. Charlotte Word of Cellmark Diagnostics in Maryland did not directly participate in the preparation of the nylon membrane used in the DNA tests. Preparation of this membrane is a crucial element in the testing procedure which detects the presence of Restriction Fragment Length Polymorphisms (RFLPs) in the DNA samples. The preparation of the membrane was completed by Brian Wraxall of Serological Research Institute, who was not called as a witness in this case. The defendant argues that without testimony from Mr. Wraxall a proper foundation was not laid establishing that the correct techniques were used in preparing the membrane. Therefore, he contends that all of the evidence concerning the DNA testing should have been ruled inadmissible.
The trial court did not gloss over the complexities of DNA evidence; it held a detailed admissibility hearing in which the experts' qualifications were adduced, and in which the methods used in DNA testing were fully explored. Mr. Harmor testified that he was in fact present during the preparation of the nylon membrane by Mr. Wraxall and that the protocol was followed. Both he and Dr. Word described the scientific controls used to insure the reliability and validity of the testing. Further, although Dr. Word was not present at the preparation of the membrane, she was able to verify the procedural validity of the work performed by Mr. Wraxall.
The trial judge concluded that the absence of testimony from Mr. Wraxall did not render the DNA evidence inadmissible. He commented that defense counsel's complaints go to the weight of the other experts' testimony, not to its admissibility. He also analogized this testimony to the testimony of physicians whose conclusions are often based on test results obtained by technicians unknown to the witness.
After reviewing the testimony contained in the record and the applicable jurisprudence, we find no error in the trial court's decision on the question of admissibility of the DNA evidence.

CONCLUSION
For the foregoing reasons, and finding no patent error, we affirm defendant's conviction and sentence.
AFFIRMED.
NOTES
[*] Judge Lucien C. Bertrand, Jr., Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.